## HENDERSON *v.* STATE

[No. 62, September Term, 1965.]

*Decided July 5, 1966.*

The cause was argued before HAMMOND, HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

*Alan H. Murrell* for appellant.

*John C. Cooper, III, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Charles E. Moylan, Jr.,* and *Stanley S. Cohen, State's Attorney,* and *Assistant State's Attorney,* respectively, *for Baltimore City,* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant was convicted by Judge Harris, sitting without a jury in the Criminal Court of Baltimore, of keeping a place for the purpose of selling lottery tickets and of possession of books, lists, slips and records of names drawn up in a lottery, contrary to Code (1957), Art. 27, §§ 360 and 362. The conviction was based in essential part upon evidence seized in or resulting from a search of the premises of the appellant made pursuant to a search warrant. The evidence was admitted over the objection of the appellant that the application for the warrant failed to show legal probable cause to justify its issuance and subsequent execution. On this appeal, no question is raised as to the sufficiency of the evidence, the sole issue being whether

the application revealed probable cause to believe that a crime was being committed in the premises of the appellant.

Code (1965 Supp.), Art. 27, § 551, provides:

> "Whenever it be made to appear to any judge * * * by a written application signed and sworn to by the applicant * * * that there is probable cause, the basis of which shall be set forth in said affidavit * * *, to believe that any misdemeanor or felony is being committed by any individual or in any building, apartment, premises * * * such judge * * * may forthwith issue a search warrant * * * to search such suspected individual, building, apartment, premises * * *."

It is established that the finding of presence or absence of probable cause is to be made from the allegations of the application for the warrant, *Burrell v. State,* 207 Md. 278, and that:

> "Probable cause, which is less than certainty or demonstration but more than suspicion or possibility, is to be determined by the judge or justice who issues the warrant, and if a prudent and cautious man would be justified from the facts presented to show its existence in believing that the offense had been or was being committed, the warrant properly may be issued. In making his determination this judicial, hypothetical, 'cautious and prudent man' may give consideration to the special significance which objects, happenings and individuals may have conveyed to the trained, experienced and knowledgeable police officers who apply for the warrant. *Dean v. State,* 205 Md. 274; *Bratburd v. State,* 193 Md. 352." *Henson v. State,* 236 Md. 518, 521.

Tested by these standards we think the application warranted Judge Jones in determining that probable cause existed to believe that a crime was being committed in the house of the appellant. The allegations in the application were based on the observations of a policeman who, for most of his ten years on the force, has been assigned to the "duties of detecting and

apprehending persons engaged in violating the gambling laws." This presumably "trained, experienced and knowledgeable" police officer alleged that after complaints had been made to the police that criminal activities were being engaged in at 3630 Columbus Drive, he began a watch of those premises on April 27, 1964. At 11:15 a.m. he saw a described man (the man) leave the house and walk to a restaurant in the next block. A few minutes later, the man came out of the restaurant and went to a nearby bakery where he remained but a short time. Next the man walked to a neighboring drug store for a short visit and then walked to the "Esso Station" on the corner. The man approached a second man, who was described and who from the description appeared to the policeman "to be an employee of the service station." The employee gave the man "what appeared to be U. S. currency," the man placed it in his right trousers pocket and took from his jacket pocket a white pad and a pencil and "went through the motions of writing on same." The man then walked back to 3630 Columbus Drive and entered the house. Within minutes a described female rang the doorbell of 3630 Columbus Drive, the man opened the door and a brief conversation ensued between the two, and the woman gave and the man accepted "what appeared to be U. S. currency."

On April 29 the officer observed the same woman he had seen two days before enter 3630 Columbus Drive and, a few minutes later, leave. Within ten minutes two men separately entered 3630 Columbus Drive and left very soon after entering. There were further allegations of telephone calls by the officer to a stated number, calling in on one occasion "16 numbers $14.25 in play" and on another "24 numbers $19.25 in play." There was no allegation that the telephone number called was that of the telephone in the house at 3630 Columbus Drive (although the proof at the trial was that it was).

We think that the allegations of the application, entirely apart from those as to the telephone calls, were sufficient for Judge Jones, acting as the cautious and prudent judicial officer the law requires, to find that there was probable cause to believe that violations of the laws against lotteries were being committed at 3630 Columbus Drive by the man. In *Wood v. State,* 185

346

Md. 280, 284, Judge Markell, for the Court, noted that "the lottery known as 'numbers' requires that the play or slips be collected by certain people designated as runners and writers * * *" and held that facts demonstrated the possibility that the restaurant under surveillance was a lottery headquarters but that probable cause so to believe could not be found from the entry into the restaurant in a short space of time of a number of men and women who stayed only briefly because, although those entering did not stay long enough for a meal "* * * it is common knowledge that most of the patrons of a 'drug store' buy anything but drugs" and "for aught that the application shows, restaurants—or this particular restaurant—may sell soft drinks, tobacco, candy and other things and may serve few meals before lunch hours." In the present case, the visits of the man to the restaurant, the bakery and the pharmacy could come within the rationale of *Wood* and have been as consistent with virtue as lawbreaking but there the resemblance ends, for a pedestrian is unlikely to be a patron of the products of a filling station, particularly if he is the recipient of money from an employee in a transaction that requires a notation by him. The likelihood that the man was writing numbers posed by his first four visits, particularly under the circumstances of the last, was enhanced by the short visit to his house by the woman and the receipt of money there, her return and brief stay two days later, and the subsequent brief calls of two other visitors within minutes. *Cf. Shrout v. State,* 238 Md. 170.

There is force in the observations of the Supreme Court in *United States v. Ventresca,* 380 U. S. 102, 13 L. Ed. 2d 684, that the requirements of the Constitution are practical and not abstract, that search warrants must be tested and interpreted by magistrates and courts in "a commonsense and realistic fashion," that the preference to be accorded a warrant indicates that in a doubtful or marginal case a search under a warrant may be sustainable, where without one it would fail and that "a grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting," and finally that:

"This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based. See *Aguilar v. Texas, supra* [378 U. S. 114, 12 L. ed 2d at 729]. Recital of some of the underlying circumstances in the affidavit is essential [as it is under the Maryland statute] if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. *Jones v. United States,* supra at 270 [of 362 U. S.]."