## TUCKER *v.* STATE

[No. 473, September Term, 1965.]

*Decided November 21, 1966.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER and McWILLIAMS, JJ.

*Milton B. Allen,* with whom were *George L. Russell, Jr.,* and *Brown, Allen & Russell* on the brief, for the appellant.

*Donald Needle, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Bernard Silbert, Assistant State's Attorney,* on the brief, for the appellee.

McWILLIAMS, J., delivered the opinion of the Court.

The trial judge (Foster, J. without a jury), having convicted appellant (Tucker) of possessing heroin, sentenced him to five years in the Maryland Penitentiary. In this appeal Tucker's principal contention is that the heroin which clinched his conviction was seized under a defective search warrant.

On 16 September 1965 Sergeant Bishop Robinson (Sgt. Robinson) a member of the Narcotics Squad of the Baltimore City Police Department presented to Judge Aaron of the Municipal Court an application for a search and seizure warrant in which it was stated that the provisions of Code, Art. 27, §§ 277 and 291 were being violated on the "premises known as 721 West Lexington Street, a three story building which is occupied by a tavern known as The Lexington West, licensed for the sale of alcoholic beverages bearing the licensee's name, Patricia Tucker, thereon and operated by Edward Lee Tucker

@ [1] Eddie Tucker." Attached to the first page of the application were the following:

"AFFIDAVIT of Louis Walter Burman,[2] 4635 Lanier Avenue—Baltimore, Maryland, in support of Search and Seizure Warrant for the premises known as The Lexington West, a night club, located at 721 West Lexington Street which is operated by Edward Lee Tucker, name of Licensee Patricia Tucker.

"I, Louis Walter Burman, do state the following to Sergeant Bishop Robinson in the presence of Officer Daniel Davis and Policewoman Bessie Norris, all members of the Narcotic Squad, Baltimore City Police Department on September 16, 1965 about 4:30 P.M.

"Eddie Always keep Heroin in the Bar, Lexington West. On Tuesday, September 14, 1965 around dust, I went to the Lexington West Night Club which is operated by Edward Lee Tucker. 1 went there to get a bundle of stuff from Eddie on consignment. We had conversation about different things and then I told Eddie that I wanted to get a bundle of Heroin. Then we went to a room which is on the west side of the bar next to the ladies' room. There is one step in front of the door and this door leads to the cellar, the upstairs, the hat check room and the stock room. As you open the door, to the left, there is a coat and an old bag hanging on the wall. Eddie keeps bundles of Heroin in the coat or the bag. In back of this door I just mentioned above, about several feet, is another door which is kept locked and upon opening this door, there is a stairway of three or four steps. To the right of this stairway, on the floor against the wall on the west side of the bar, is a wooden footlocker with a

---

1. Police shorthand for "also known as." Appellant and Patricia Tucker are husband and wife.

2. The correct name of the affiant is "Berman." The quoted portions of the application and the warrant are set forth verbatim. No attempt has been made to correct or indicate the many mistakes in grammar, spelling and typography.

pad lock on it. In this footlocker I saw forty or fifty bundles of Heroin. Eddie gave me one bundle of Heroin out of this footlocker at this time.

/s/ *Louis Walter Berman*
Louis Walter Berman

WITNESS : /s/ *Sergeant Bishop Robinson*

"Subscribed and sworn to before me this 16th day of September, 1965.

/s/ *Howard L. Aaron*
Associate Judge of the Municipal Court
of Baltimore City."

"AFFIDAVIT OF Sergeant Bishop Robinson, member of the Narcotics Squad, Baltimore City Police Department, in support of Search and Seizure Warrant for the premises known as The Lexington West, a night club, located at 721 West Lexington Street which is operated by Edward Lee Tucker, name of Licensee, Patricia Tucker.

"That the grounds for a search and the basis of probable cause are that, since 1962 Sergeant Bishop Robinson has received information from reliable sources that Edward Lee Tucker sells Heroin in large quantities. Sergeant Robinson have received this reliable information on the following dates :

"August 9, 1962
January 19, 1963
April 23, 1963
May 26, 1963
The most recent being August 19, 1965.

"This information, on these dates, is from separate reliable sources. Prior investigations made by the Narcotic Office supports the information given by these reliable sources that Edward Lee Tucker is a wholesale dealer of narcotics.

"Because of the above facts and the affidavit of Louis Walter Burman contained herein, there is probable cause to believe that there is now illicit narcotic

drugs being secreted in the said building named and described herein.

/s/ *Sergeant Bishop Robinson"*

The last page of the application is as follows:

"The affiants therefore pray that a search and seizure warrant be issued authorizing Sergeant Bishop Robinson, with the necessary and proper assistants: (a) to enter and search said premises, (b) to search the person and clothing of said previously named or described person(s), (c) to search all other persons who may be participating in said criminal activities; and seize all evidence and other material having to do with the possessing and illegal keeping or selling of narcotic drugs, in the heretofore mentioned apartment, as well as any and all persons believed to be in possession of narcotic drugs at the time of the execution of this warrant.

"Subscribed to this 16th day of September in the year of Our Lord, one thousand nine hundred and sixty-five.

/s/ *Sergeant Bishop Robinson*
Sergeant, Narcotic Squad, Baltimore
City Police Department

/s/ *Louis Walter Berman*
Louis Walter Berman
4635 Lanier Avenue
Baltimore, Maryland

"Subscribed to and sworn to before me on this 16th day of September 1965.

/s/ *Howard L. Aaron*
Associate Judge of the Municipal Court
of Baltimore City."

The warrant issued by Judge Aaron is directed to Sgt. Robinson. The second page thereof is identical with the affidavit of Berman set forth above. The third page is identical with the affidavit of Sgt. Robinson.

Declaring that he was satisfied there was "probable cause to believe that narcotics" were being concealed on the premises he

commanded Sgt. Robinson, with the necessary and proper assistants,

"(a) to enter and search the said premises, (b) to search the person and clothing of the said previously named or described person(s), (c) to search all other persons who may be participating in said criminal activities, and (d) to arrest all persons, including the previously named or described person(s) who may be participating in the said criminal activities; and seize all evidence and other material having to do with the maintaining and illegal keeping or selling of drugs in the heretofore mentioned building, as well as any and all persons believed to be in the possession of drugs at the time of the execution of this Warrant; and bring the said person(s), evidence and material before me the subscriber, or some Judge of the Municipal Court of Baltimore City aforesaid, to be dealt with and disposed of according to law."

Sgt. Robinson, flanked by two policemen and a policewoman, entered the tavern at 721 West Lexington around 11:00 P.M. on 16 September, showed Tucker the warrant and went immediately to the basement. After looking around for a minute or two they returned to the first floor. Sgt. Robinson pointed to a padlocked door (described by Berman) and asked Tucker if he had a key to the padlock. Tucker said the key was behind the bar. When Sgt. Robinson told him to get the key he said the keys were not behind the bar but in his car. Tucker thereupon handed his car keys to one of the policemen and told him that he would find on the floor of the trunk a set of keys, one of which would open the padlock on the storeroom door. There was such a key and with it the lock was opened. Concealed among the bottles of liquor in the storeroom Sgt. Robinson found a supply of heroin and quinine hydrochloride (used to attenuate the heroin) worth from $10,000 to $20,000.

At trial Tucker moved to suppress the evidence because (a) the warrant was insufficient on its face, (b) the property seized was not the property described in the warrant, (c) lack of probable cause, and (d) the warrant was illegally executed.

Following the denial of his motion to suppress evidence Tucker's request to submit evidence controverting the allegations in Berman's affidavit was likewise refused, whereupon he offered to prove that Tucker's wife was the lessee of the premises (except the third floor), that she was the holder of the liquor license and the operator of the tavern and that Tucker was the manager. He offered to prove further that Berman was an addict, that he had twice been convicted of violations of the narcotic laws, that he has "been convicted of murder," that the friendship of Tucker and Berman came to an end on 6 September 1965 after "a bitter argument," that Berman was arrested on 16 September 1965 and that to avoid prosecution as a third offender of the narcotic laws he elected to give a statement implicating Tucker. He offered to prove also that the contraband seized by Sgt. Robinson was in the possession or under the control of Berman.

The State offered in evidence the warrant and the application therefor. Sgt. Robinson supplied the details of the search and seizure and the narcotics together with the chemical analyses thereof were received in evidence. He said Tucker told him there was only one key to the storeroom.

Juanita Barnes was the only witness produced on behalf of Tucker. She claimed to be the manager. She testified, however, that except for ordering, at regular intervals, the liquor Tucker told her to order she was really the barmaid. She said the storeroom was accessible to herself and six other employees, including Berman until his discharge on 6 September. She contradicted Sgt. Robinson's testimony that there was only one key to the storeroom. She testified there were at least three keys, her own (which she produced), Tucker's and Mrs. Tucker's. She said there were times when Berman had possession of Tucker's key.

In rebuttal the State produced the executive secretary of the Board of Liquor License Commissioners. He identified as one of his records a list of Tucker's employees furnished by Tucker's accountant. At least four of the six other employees said by Juanita Barnes to have had access to the storeroom are not shown thereon. The list describes her, not as a manager, but

as a barmaid. He testified also that Tucker told him he was the manager.

## I.

Tucker contends the warrant is fatally defective for a number of reasons, the first of which is that there is a variance between the place described in the application and the place authorized to be searched in the warrant. The statements intended to constitute probable cause, he argues, are directed to one room only whereas the warrant authorizes the search of the entire "premises known as 721 West Lexington Street." Assuming there is any merit in this contention the fact that the heroin was found in the room described in Berman's affidavit dissipates much of its force. We have said many times that there is no formula which can be used to measure the particularity with which premises must be described and that the adequacy of the description in every case will depend on the facts and circumstances there present. *Allen v. State,* 178 Md. 269, 13 A. 2d 352 (1940) ; *Saunders v. State,* 199 Md. 568, 87 A. 2d 619 (1952) ; *Dow v. State,* 207 Md. 80, 113 A. 2d 423 (1955). The sufficiency of the description in the case at bar is obvious when measured against the circumstances of two of our recent decisions. In *Hall v. State,* 232 Md. 588, 194 A. 2d 801 (1963) the probable cause set forth in the application was directed to a grocery and confectionery store located on the first floor of the premises described in the warrant. The warrant authorized a search of "the premises known as Randy's Confectionery, 1436 Holbrook Street." We held that a search of the entire premises was permissible. In *Ferguson v. State,* 236 Md. 148, 202 A. 2d 758 (1964), the warrant authorized a search of 1301 E. Baltimore Street. Three connected buildings, 3, 5 and 7 S. Central Avenue, were searched. We rejected the contention that the search was illegal.

Tucker next challenges the sufficiency of the supporting affidavits. He argues that Berman did not swear to the truth of his statement and that his oath was only to the fact that he made such a statement to Sgt. Robinson. This must be dismissed as sophistry. The application, on its face, shows that Berman signed and swore to his statement not once but twice. Sgt. Robinson's affidavit is challenged because he did nothing more

than sign his name on page 3 of the application. This also must be waved aside. Sgt. Robinson signed, on page 3, what is described as an "affidavit" and on the very next page, where he is described as an "affiant," Judge Aaron certifies that both he and Berman subscribed and swore to their respective statements. Tucker leans heavily on *Howard v. State,* 199 Md. 529, 87 A. 2d 161 (1952), but in our judgment the case at bar is clearly distinguishable. In *Howard* the warrant recited that it had been issued upon "written information * * * signed and sworn to by Sergeant S. Ralph Warnken." The grotesque inadvertence which resulted in the use of Judge Warnken's (then a member of the Supreme Bench of Baltimore City) name, rather than that of Sgt. Middleton to whom the warrant was directed, is unimportant here. There was, however, no showing that Howard knew that his accuser was Sgt. Middleton and not Judge Warnken or that he was served with all the information the issuing judge had. *Goodman v. State,* 178 Md. 1, 11 A. 2d 635 (1940). In the case before us Tucker read the warrant carefully. It told him not only who his accusers were but also recited the same facts Judge Aaron had before him when he issued the warrant. Judge Hammond (now Chief Judge) for the Court, said in *Henderson v. State,* 243 Md. 342, 346, 221 A. 2d 76 (1966):

> "There is force in the observations of the Supreme Court in *United States v. Ventresca,* 380 U. S. 102, 13 L. Ed. 2d 684, that the requirements of the Constitution are practical and not abstract, that search warrants must be tested and interpreted by magistrates and courts in 'a commonsense and realistic fashion,' that the preference to be accorded a warrant indicates that in a doubtful or marginal case a search under a warrant may be sustainable, where without one it would fail and that 'a grudging or negative attitude by reviewing courts towards warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting,' * * *."

Assuming, without deciding, there is merit in Tucker's argument that Sgt. Robinson's affidavit does not contain facts with-

in his personal knowledge and that the facts therein stated do not provide a basis for determining the reliability of his sources of information, there is, nevertheless, in the affidavit of Berman enough information to justify the issuance of the warrant. Quite recently, in *Shrout v. State,* 238 Md. 170, 175, 208 A. 2d 585 (1965), Judge Oppenheimer, for the Court, said:

> "However, even though the affidavit contains insufficient or even improper information which should not be considered by the court, if, in addition, it contains sufficient proper information to show probable cause, the court is justified in issuing the warrant. *Kapler v. State, supra* [194 Md. 580, 587-588, 71 A. 2d 860 (1950)]; *Bratburd v. State,* 193 Md. 352, 357, 66 A. 2d 792 (1949)."

Tucker's claim that Berman is an "informer" whose reliability has not been established has no merit for the simple and obvious reason that Berman is an affiant; nevertheless, assuming him to be an "informer" rather than an affiant, his reliability has been established by the complete corroboration of his statement.

Tucker next argues that because the warrant authorizes the seizure of all persons in the building *believed* to be in the possession of drugs it is a general warrant and as such is proscribed by Art. 26 of the Maryland Declaration of Rights, the Fourth and Fourteenth Amendments to the U. S. Constitution, Code, Art. 35, § 5 and Code, Art. 27, § 551 (1957, Cum. Supp. 1965). In reply to this argument appellee says (a) that Tucker cannot complain because the rights of others may be violated, citing *Saunders v. State, supra* and *Griffin v. State,* 232 Md. 389, 194 A. 2d 80 (1963); (b) that the challenged language may be rejected as surplusage, *Saunders v. State, supra;* (c) that the command is not improper, *Saunders v. State, supra; Allen v. State, supra; Asner v. State,* 193 Md. 68, 65 A. 2d 881 (1949); *Lucich v. State,* 194 Md. 511, 71 A. 2d 432 (1950); *Smith v. State, infra,* and *Griffin v. State, supra;* (d) that the evidence was procured, not by the search of Tucker or *any* other person but by a search of the premises; and (e) that in any event the search would have been legal (Code, Art. 2 B,

§ 190) without a warrant. In respect of appellee's last mentioned point (e) it is undisputed that alcoholic beverages were kept and sold on the premises under and by virtue of a license issued under the provisions of Code, Art. 2 B, § 190 of which gives any peace officer the authority to inspect and search the licensed premises without a warrant, at all hours. The only person seized was Tucker who, of course, was named in this warrant. No other persons were molested and only the licensed premises were searched.[3] In *Davids v. State,* 208 Md. 377, 118 A. 2d 636 (1955) the defendant was convicted of bookmaking on evidence seized by police officers who entered his tavern without a warrant. We held that Code, Art. 2 B, § 179 (now § 190) authorized their entry upon his premises. Since consideration of appellee's other points would amount simply to another passing over well charted seas further discussion seems unnecessary.

## II.

Tucker next contends that the trial judge's refusal to allow him to controvert Berman's affidavit by testimony of "bad blood" between him and Tucker, Berman's "illegal" arrest by the Narcotics Squad and the threat to prosecute him as a third offender unless he gave a statement accusing Tucker of possessing narcotics constitutes reversible error. The trial judge, of course, was bound by our holding in *Smith v. State,* 191 Md. 329, 335, 62 A. 2d 287 (1948), cert. den. 336 U.S. 925 (1949), wherein Judge Collins, speaking for the Court, said:

> "The better rule seems to be that the court's consideration of the showing of probable cause should be confined solely to the affidavit itself, and the truth of the alleged grounds stated in the affidavit cannot be controverted, as was done in the instant cases, by receiving the testimony of the accused and other witnesses. *Ray v. State,* 1929, 43 Okl. Cr. 1, 276 P. 785; *Commonwealth v. Thacker,* 1929, 229 Ky. 488, 17 S. W. 2d 399; *Piper v. State,* 1931, 116 Tex. Cr. R. 378, 34 S. W. 2d 283; *Cornelius on Search and Sei-*

---

3. The third floor was visited but not searched. Sgt. Robinson said they "just looked around—wouldn't call it a search."

*zure,* Sections 169 and 170, *supra* [1930 Edition, Chapter 7]."

Tucker's answer to *Smith v. State* is that however "legally sound, well intentioned and theoretically perfect" it may be, it has become "an instrument of oppression and a vehicle of perjury" and that we ought to "re-examine" our holding "in light of developments in the field of Constitutional law" since it was decided in 1948. We have examined carefully all of the decisions [4] of this Court and the Supreme Court cited by Tucker but we do not think any of them bear upon the question presented. In *Tischler v. State,* 206 Md. 386, 390-91, 111 A. 2d 655 (1955) Judge Delaplaine, for the Court, said:

"Appellant urged that we should abrogate this rule because it encourages police officers to make false statements under oath. But the rule which was adopted by this Court in 1948 was reaffirmed in 1951 in *Goss v. State,* 198 Md. 350, 354, 84 A. 2d 57; again in 1952 in *Adams v. State,* 200 Md. 133, 139, 88 A. 2d 556; and again in 1953 in *Harris v. State,* 203 Md. 165, 172, 99 A. 2d 725. Accordingly we again assert that the rule is so firmly established in Maryland that it should not be changed by a decision of this Court. We also take occasion to say that this rule has been generally followed in other States. [Citing cases.]"

Less than six months later, in *Burrell v. State,* 207 Md. 278, 280, 113 A. 2d 884 (1955), Judge Hammond after quoting the language of Judge Delaplaine above set forth, said for the Court: "We are not persuaded that the earlier cases were wrongly decided," and we are not now so persuaded.

### III.

Insufficiency of evidence to support the conclusion of the

---

4. *Farrow v. State,* 233 Md. 526, 197 A. 2d 434 (1964); *Drouin v. State,* 222 Md. 271, 160 A. 2d 85 (1960); *Mapp v. Ohio,* 367 U. S. 643 (1961); *Rugendorf v. United States,* 84 S. Ct. 825, 376 U. S. 528 (1964); *Roviaro v. United States,* 353 U. S. 53 (1957); *Douglas v. State of Alabama,* 380 U. S. 415 (1965); *Pointer v. State of Texas,* 380 U. S. 400 (1965).

trial judge is the gist of Tucker's final contention. He argues that it was not shown he had possession or control of the contraband, that it was not on his person, that others also had access to the storeroom. He emphasizes the fact that no contraband was found in the second floor office which was under his exclusive control. The facts, he says, are as consistent with innocence as they are with guilt. Unfortunately for Tucker it is not quite that simple.

It will be recalled that he told Sgt. Robinson that he had the *only* key to the storeroom, that *the key* was behind the bar, that *it* was not behind the bar but was in the trunk of his automobile. At trial he sought to show through Juanita Barnes that both she and his wife each had a key and that at least seven people had access to the storeroom. Quite apart from the fact such an arrangement is most unlikely the testimony offered to prove it is hardly persuasive. Juanita claimed to be manager but according to the records of the Board of Liquor License Commissioners Tucker was the manager and she was only the barmaid. As earlier noted at least four of the seven people she claimed had access to the storeroom are not included in the Board's list of employees. The attempt to show that Berman also had access to the storeroom was productive of a contradiction. She said "the car keys and the storage room keys" were together "all in one set" yet Tucker gave the officer the *car keys* so he could unlock the trunk and get the *storeroom keys*.

That the findings of fact of the trial judge will not be disturbed unless clearly erroneous is a rule which has long been firmly established. Maryland Rules 886 a and 772. As Judge Horney said in *McCray v. State*, 236 Md. 9, 15, 202 A. 2d 320 (1964):

> "For this Court to reverse a judgment entered in a case tried by the lower court without a jury, it must be shown that there was no legally sufficient evidence, or proper inferences therefrom, from which the court could find the accused guilty beyond a reasonable doubt."

We think there was enough legally sufficient evidence to support Judge Foster's finding.

Additional support for the trial court's decision, if necessary, can be found in *Berry v. State*, 202 Md. 62, 67, 95 A. 2d 319 (1953) and in *Rugendorf v. United States*, 376 U. S. 528 (1964).

The judgment of the trial court will be affirmed.

*Judgment affirmed.*
*Costs to be paid by appellant.*