JOHN PRESTON SCOTT *v.* STATE OF MARYLAND

[No. 83, Initial Term, 1967.]

482

484

*Decided July 18, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and MENCHINE, J., Associate Judge of the Third Judicial Circuit, specially assigned.

*Sherman W. West* for appellant.

*Donald Needle, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Howard S. Chasanow, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

John P. Scott appeals from a judgment of conviction for receiving stolen goods of a value in excess of $100.00 and for vio-

lation of Article 27, § 264B (Possession of Slot Machines). He was sentenced to six years' imprisonment on the receiving count and one year's imprisonment concurrent on the possession count.

His numerous contentions of error are encompassed within:

1. An attack upon the search and seizure warrants, with concomitant attack upon the admissibility of evidence seized thereunder.
2. An attack upon the sufficiency of the evidence to convict.
3. An assertion that the trial court improperly permitted a witness to refresh his recollection by a memorandum.
4. An assertion that he was denied due process by reason of the incompetency of counsel.
5. An argument that the verdict in each case was contrary to the weight of evidence.
6. An assertion that the machines seized did not fall within the statute.

### 1. The Warrants

On October 22, 1965, Associate Judge Samuel W. Meloy in the Circuit Court for Prince George's County issued two search warrants, (1) to search the property known as 5303 Cable Avenue, Camp Springs, Maryland, and (2) to search a 1964 maroon Cadillac Convertible with a white top, bearing license number DN 3660. Each was issued after affidavit and application identical in every respect except the place to be searched and are attacked upon the following grounds:

1. That they were technically deficient because affiant was not sworn before the notary.
2. That they were unconstitutional as general warrants.
3. That they were invalid because directed to the Sheriff of Prince George's County for their enforcement.
4. That the affidavit and application did not show probable cause for their issuance.

### As to the oath of the Affiant

The record affirmatively shows that in both instances the applicant was sworn by the judge who issued the warrant. This is sufficient, whatever the notary may have done. *Tucker v. State*, 244 Md. 488, 497.

*As to the contention they were General Warrants*

The affidavit and application were incorporated by reference and attached to the warrants, each of which specifically named the appellant. The fact that the warrants included others who may be found upon the premises does not make the warrants objectionable as general ones. *Griffin v. State,* 232 Md. 389, 393.

In contending that one was a forbidden general warrant, counsel argued that "It is inconceivable that a slot machine could be concealed upon a person or inside a home safe." The point is frivolous because it *is* quite conceivable that papers or documents relating to them may be found there.

*The direction of the Warrants to the Sheriff*

Appellant argues that § 551 of Article 27 grants exclusive power to "policemen, constables and police officers" to serve and return warrants for search and seizure and that a sheriff is therefore without power to do so. The contention compels consideration of the nature of the power and duty of a sheriff.

The sheriff is a constitutional officer (Art. IV § 44) possessing common law powers and duties (*Baltimore v. State,* 15 Md. 376, 466, 488) by which he was "bound to execute all process issuing from the king's court of justice." *1 Bl. Comm. 344.* Maryland embraced that common law duty by statutory mandate in § 5 of Article 87 requiring that the sheriff "shall serve and return all writs and process directed to him according to the command contained therein."

Constables, on the other hand, are without power to serve and enforce orders of court in the absence of statutory authority. *Leavitt v. Leavitt,* 135 Mass. 191, 194; *Winkler v. State,* 32 Ark. 539, 548. Historically, constables served process issued by justices of the peace. *1 Bl. Comm. 355.* This common law distinction between sheriff and constable was preserved in Maryland by Constitution (Art. IV, § 42) and by Statute (Art. 20, § 3).

Policemen and police officers historically had even lesser power in making service and return of process. It has been said that the term "policeman" is the legal equivalent of "watchman" at common law. *Porter v. State,* 52 S. E. 283, 285 (Georgia); *State v. Evans,* 61 S. W. 590, 593 (Missouri). "Watchman" at common law was recognized as a "conservator of the peace"

who acquired his office by appointment from a constable. *1 Bl. Comm. 357.* Manifestly, his powers would not exceed those of his creator. LeGrand, C. J. in his concurring opinion in *Baltimore v. State, supra,* at page 482, *et seq.* discusses the kinship of "constables" and "police," while pointing out the "constitutional" status of the former but only the "common-law" status of the latter.

The contention that the legislature intended to prohibit the sheriff from the exercise of an usual and historic duty of his office is untenable. It can be made only on the basis that Art. 87, § 5, *supra,* was repealed by implication. It is a long established rule of statutory construction that repeals by implication "are not favored and will not be so held unless there is some express reference to the previous statute, or unless there is a manifest inconsistency in the two, or their provisions are so repugnant that they cannot stand together." *Green v. State,* 170 Md. 134, 140. There is no such discord between Art. 87, § 5 and Art. 27, § 551. It must be assumed that the legislature knew that the sheriff already possessed full power to serve and return all process of the courts. It is clear therefore that Art. 27, § 551 intended only to enlarge the number and types of persons qualified to serve and return search and seizure warrants. It did not alter the sheriff's ancient, historic function to serve and return the process of the courts. The use in § 551 of the permissive word "may" rather than the compulsive words "shall" or "must" confirms this view. *Shrout v. State,* 238 Md. 170, 173.

### Probable cause for issuance

The appellant contends that "the basis for the issuance of the warrant must be within the personal knowledge of the applicant and cannot be certified by his oath or information and belief, even if the facts and sources of his information on which his belief was based, such as responsible official sources, were stated."

The essence of the appellant's position is that the 1958 Amendment to Article 27, § 551, and certain decisions of the Court of Appeals in warrant cases, particularly *Shrout v. State, supra,* establish in Maryland a rule of law more stringent and demanding than the rule announced by the United States Supreme Court

in search warrant cases. We believe this position is not tenable.

In passing upon this question it is appropriate to point out that both the affidavit and application for the warrants allege violation of Article 27, § 264B. Under that section the mere possession of the proscribed article is itself a criminal offense. Probable cause has been clearly and succinctly defined as: "less than certainty or demonstration but more than suspicion or possibility." *Burrell v. State,* 207 Md. 278.

The United States rule was declared in *Jones v. United States,* 362 U. S. 257; 4 L. Ed. 2d 697, 708, as follows:

> " '*We conclude therefore that hearsay may be the basis for a warrant.* We cannot say that there was so little basis for accepting the hearsay here that the Commissioner acted improperly. The Commissioner need not have been convinced of the presence of narcotics in the apartment. He might have found the affidavit insufficient and withheld his warrant. But there was *substantial basis* for him to conclude that narcotics were probably present in the apartment, *and that is sufficient.* * * * Corroboration through other sources of information *reduced the chances of a reckless or prevaricating tale;* that petitioner was a known user of narcotics made the charge against him much less subject to skepticism than would be such a charge against one without such a history.' (Emphasis supplied.)"

The rule derived from *Draper v. United States,* 358 U. S. 307; 3 L. Ed. 2d 327, itself not a search warrant case, but declared parallel because it arose under a statute requiring "probable cause" to exist before an arrest could be made.

The rule was discussed at length and fully adhered to in *United States v. Ventresca,* 380 U. S. 102; 13 L. Ed. 2d 684, in which an appeal by the government from a decision adverse to a warrant produced reversal.

It is conceded here that unless the reliable information acquired by Sheriff Jamieson from his informant could be considered by Judge Meloy in making his decision as to the existence of probable cause, the warrants are invalid.

The appellant relies heavily upon *Shrout, supra,* to support his contention. We hold it does not do so.

The Court of Appeals made very clear in that case that its decision was not grounded upon a rejection of the use of reliable information as a factor in the determination of probable cause. On the contrary, the Court at page 176 said:

"Entirely apart from the information received from the informer, in our opinion, there were ample facts set forth in the affidavit to show probable cause for the issuance of the warrant."

Indeed, the Court of Appeals in that very case used language showing a leaning against rather than toward the appellant's position. (See particularly pp. 176 and 177.)

Close examination of this and other cases makes clear that the issue, now squarely before us, has never been determined in Maryland. However, the Court of Appeals in a number of cases has given manifest approval to general principles declared in *Ventresco, supra; Jones, supra* and *Draper, supra*[1] and this circumstance adds persuasively to the conclusion that the positions of Maryland and the United States are not disparate.

The refusal of the Court of Appeals to permit the issuance of a warrant on hearsay from an unknown source as in *Kapler v. State,* 194 Md. 580, announces no law special or peculiar to Maryland. *Aguilar v. Texas,* 378 U. S. 108; 12 L. Ed. 2d 723, is in full accord. But *Ventresca, supra* (at page 688 of 13 L. Ed. 2d) makes it crystal clear that "in Aguilar we recognized that 'an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant,' *so long as the magistrate is 'informed of some of the underlying circumstances' supporting the affiant's conclusions."* [Italics supplied]

The true state of the Maryland law appears precisely to par-

---

1. Lane v. State, 226 Md. 81, 92; Murray v. State, 236 Md. 375, 378; Wells v. State, 236 Md. 381, 385; Shrout v. State, 238 Md. 170, 176, 177; Edwardsen v. State, 243 Md. 131, 135; Henderson v. State, 243 Md. 342, 346, 347; Tucker v. State, 244 Md. 488, 497; Gatewood v. State, 244 Md. 609, 616. (Particularly at the pages specifically referred to.)

allel the United States rule. It is very significant that Chief Judge Hammond, citing *U. S. v. Ventresca, supra,* with approval, chose to quote this passage from that decision in *Henderson v. State,* 243 Md. 342, 347 :

> " 'This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the "underlying circumstances" upon which that belief is based. See *Aguilar v. Texas, supra* [378 U. S. 114, 12 L. Ed. 2d at 729]. Recital of some of the underlying circumstances in the affidavit is essential [*as it is under the Maryland statute*] (the emphasized parenthetical words are Judge Hammond's) if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. *Jones v. United States,* supra at 270 [of 362 U. S.].' "

Chief Judge Hammond's parenthetical reference to the Maryland statute equates it with the United States rule authorizing hearsay information from a reliable source to be utilized in the determination of "probable cause" if the issuing court is informed of some underlying circumstances within the personal knowledge of the affiant reasonably justifying a belief in the reliability of the information received from a known informant.

The anomaly of a decision granting authority to police to arrest upon reasonably reliable information (as in *Murray v. State,* 236 Md. 375, 378) while denying authority to police to submit that same information to the scrutiny of a judicial of-

ficer in an application for a warrant is as unwarranted an action in Maryland as it has been declared in the Federal Courts.

In *Jones v. U. S.*, 362 U. S. 257, 270, it was said:

> "What we have ruled in the case of an officer who acts without a warrant governs our decision here. If an officer may act upon probable cause without a warrant when the only incriminating evidence in his possession is hearsay, it would be incongruous to hold that such evidence presented in an affidavit is insufficient basis for a warrant. If evidence of a more judicially competent or persausive character than would have justified an officer in acting on his own without a warrant must be presented when a warrant is sought, warrants could seldom legitimize police conduct, and resort to them would ultimately be discouraged."

The late case of *Tucker v. State*, 244 Md. 488, at page 498, strongly intimates that hearsay may be utilized by an affiant when its reliability has been established, as does the very recent case of *Gatewood v. State*, 244 Md. 609, wherein the Court of Appeals stated at page 615, that a "general statement received from an unnamed informant, who is only alleged to be 'considered reliable' *without any reason given as the basis for that conclusion,* would not be probable cause for the issuance of a warrant." (Emphasis supplied.)

In the instant case the informant gives a precise recital of an actual crime taking place on the very day of the warrant application. The sheriff took oath that his informant was a person "who in the past has given information which has always proven reliable." This is far different than the conclusory expression "believed reliable" that is held inadequate by the courts. But there is far more in the nature of "underlying circumstances" stated with precision in the affidavit and application here. The sheriff went on to make oath, from personal knowledge, that the person accused had a police record and was the subject of numerous police investigations dealing with receiving stolen merchandise.

The precise recital of the informant went so far as to detail the fact that a particularly described automobile, owned by a

person other than the accused, was used to transport the contraband. The sheriff made oath, from personal knowledge, that the person accused had been observed by him driving that very vehicle.

Since this is a case where possession alone is the gravamen of the offense, it is strikingly similar factually to *Draper v. U. S.,* 358 U. S. 307, 3 L. Ed. 2d 327, the case that, as heretofore noted, is the keystone of the United States search warrant cases.

We hold that Judge Meloy had a substantial basis to conclude that a sufficient showing had been made to warrant a conclusion that the information received was shown to be reliable by evidence personally known to the affiant as would justify its acceptance by the Judge in determining whether probable cause existed for the issuance of the warrants.

Since we hold that the warrants were lawfully issued, the evidence seized under their mandate was properly admitted in evidence.

In any case, the appellant's position would not be helped if the warrants were invalid. The uncontradicted evidence shows that a misdemeanor was committed in the presence of an officer. Detective Albert L. Kulle, of the Prince George's County Police Department, stationing himself where he could observe the defendant's house, saw Scott carrying slot machines from the automobile to the back of his house. He reported his observations to the sheriff and went with the latter to the defendant's home, participating fully in the arrest and search.

In *Gault v. State,* 231 Md. 78, wherein it was contended that the search of the premises was illegal, (for a reason other than invalidity of a warrant) the Court of Appeals in language significantly applicable to this case, said at page 81 :

> "But we think the search was legal for another reason. Possession of narcotics is a misdemeanor under Code (1957), Art. 27, Sec. 276 et seq., and it is settled law that an officer may arrest for a misdemeanor committed in his presence, without a warrant. *Robinson v. State,* 229 Md. 503, 507 and cases cited. Officer Thomas saw enough to indicate to a reasonable

man that two of the occupants of the apartment possessed narcotics, for they obviously were concealing or throwing away objects that had the look of narcotics, in an effort to avoid their discovery by the police. See *Allen v. State,* 229 Md. 253, 256 and cases cited. The case of *Beale v. State,* 230 Md. 182, is distinguishable on the facts, for there the officer who picked up the discarded package was a trespasser at the time, and not in the public highway. Cf. *Harris v. State,* 203 Md. 165. *Stanley v. State,* 230 Md. 188 is also distinguishable for there the probable cause for the arrest, on which the police relied, was a report as to a suspect received over their patrol car radio, and it was not claimed that there was any evidence of a crime committed in the arresting officers' presence. Since the search in the instant case was incident to a lawful arrest, *Mapp v. Ohio,* 367 U. S. 643, has no bearing."

The appellant suggests that this rule could have no application to the instant case because "Detective Kulle did not place the defendant under arrest or conduct the search, but merely followed Sheriff Jamieson, who was proceeding under authority of the warrant."

This Court has been referred to no case and has found none, wherein it has been held that the right of a police officer to arrest and to search incident thereto is curtailed because a search warrant is held by another officer. It would be odd indeed if a defendant, observed in the commission of a misdemeanor by a conservator of the peace, and therefore subject to lawful arrest and incidental search, would be permitted to avoid both by showing that an unnecessary warrant was improvidently issued.

## 2. *Legal Sufficiency of the Evidence*

In the receiving case it is contended that the State failed to show (a) guilty knowledge; (b) value in excess of $100.00, and (c) ownership in the person alleged. The contention is without merit.

Guilty knowledge of the accused is inferable from the testimony of Sheriff William J. Jamieson. Also, it was shown that the slot machines involved had been recently stolen. The posses-

sion of such property has been held to give rise to a factual presumption that the possessor was guilty of receiving stolen goods when a showing is made that another person was involved in the theft. *Anglin v. Sate*, 244 Md. 652, 657. *Jordan v. State*, 219 Md. 36, 48, 49. There was direct testimony to such effect in this case. The retail value of the machines was shown to be between $1700 and $1800. The owner alleged in the indictment, testified he bought them on August 19, 1965.

### 3. *The Memorandum to Refresh Recollection*

The owner of the machines, for purposes of refreshing his recollection, was permitted to use a memorandum made contemporaneously with the purchase by him of the seven (7) slot machines on August 19, 1965 (before the theft). The memorandum was part of an antecedent business transaction, included a receipt for money paid and had been accepted by him as a record of the identity of the machines purchased. The memorandum was clearly proper for use to refresh the recollection of the witness. *Basoff v. State*, 208 Md. 643, 652; *Burgess v. State*, 161 Md. 162, 169; *Myers v. State*, 137 Md. 496, 502.

### 4. *The Alleged Incompetency of Counsel*

The record shows abundantly that trial counsel below presented the defense of the accused in a most vigorous and able manner, according protection to the accused at every point in the proceedings from the time of indictment through time of sentence. This contention it totally without merit. *Caviness v. State*, 244 Md. 575.

### 5. *That the Verdict in Each Case Was Contrary to the Weight of Evidence*

This is not a matter for consideration by an appellate court. *Moxley v. State*, 212 Md. 280, 287.

### 6. *Are the Machines Within the Statute?*

Section 264 B particularly defines a slot machine as "one that is adapted for use in such a way that, as a result of the insertion or deposit therein, or placing with another person of any piece of money, coin, token or other object, such machine, apparatus or device is caused to operate or *may be operated*, and by reason of any element of chance or of other outcome of such

operation unpredictable by him, the user may receive or become entitled to receive any piece of money, coin, token or other object representative of and convertible into money, irrespective of whether the said machine, apparatus or device may, apart from any element of chance or unpredictable outcome of such operation, also sell, deliver or present some merchandise or money or other tangible thing of value." [Italics supplied]

The devices were admitted in evidence and observed by the jury. A Maryland jury reasonably could be expected to make the decision whether they fell within the statute from this observation alone. However, numerous witnesses described them as slot machines.

The fact that there was no showing that they were operational is beside the point in the light of the italicized language in the statute and in the light of the fact that the owner said he "could tell they are not in too bad shape." The inference is plain that they were operational or could be made to operate.

There was evidence sufficient to convict of possession in violation of Section 264B.

*Judgments affirmed.*