## PATRICK MICHAEL PROPST, OLLIE MAY, JR., AND RUTH VIRGINIA MAY *v.* STATE OF MARYLAND

[No. 369, September Term, 1967.]

*Decided August 19, 1968.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Harold Buchman* for appellants.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan,*

*Jr., State's Attorney for Baltimore City,* and *Frank A. De Costa, Jr., Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Patrick Michael Propst, Ollie May, Jr. and Ruth Virginia May, his wife, were tried without a jury in the Criminal Court of Baltimore. Propst was convicted on several counts of conducting a bookmaking operation on nine separate days and of conducting a lottery for one day. The Mays were both convicted on several counts of maintaining an apartment for gambling purposes. No complaint has been made as to merger or duplicity of the various counts. Propst was sentenced to consecutive terms totaling five years and fined a total of $10,000. and costs. The Mays were each sentenced to three years and each fined $10,000. and costs. The contentions of the appellants will be set out hereinafter.

On May 4, 1966, police officers acting under the authority of a search warrant went to the premises at 2100 E. Fairmount Avenue in Baltimore and executed the warrant. Propst was found seated at a table; and in front of him were lottery and horse race bets slips. Ruth Virginia May was seated in the kitchen which was a small room adjacent to the one in which Propst was seated. At the time of the raid, Propst had a telephone receiver in his hand. The bookmaking slips showed play from April 25th through May 4th inclusive of between $2,000. and $3,000. per day. In addition the lottery slips for May 4th showed a total play of approximately $800.

## I The Search Warrant

All appellants contend that the search warrant was invalid because there was no probable cause to believe that gambling operations were being conducted at the premises for which it was issued, the second floor front apartment of 2100 E. Fairmount Avenue, Baltimore. The factual allegations in the affidavit supporting the warrant and in the search warrant itself may be summarized as follows: On April 30, 1966, the patrolmen who sought the warrant, acting on information that bookmaking operations were being conducted at the New York

Grill Restaurant went to that restaurant. They seated themselves behind Propst who was carrying an Armstrong Daily News Review. They overheard Propst say to another man "I guess you want your money lucky" whereupon Propst gave the man some U. S. currency. The policeman further overheard the unidentified man ask Propst "let me see your scratch sheet." Propst complied to the request and after consulting it the second man said to Propst "you might as well take this double while you are here" whereupon he returned to Propst the "scratch sheet" with some U. S. currency saying "give me a $5.00 double at Garden State on 'Double Oats' and 'Red Black'." [1] Propst then marked his "scratch sheet" saying "O.K. call me later." The policemen then observed Propst leave the restaurant and enter the second floor front of 2100 E. Fairmount Avenue. Moments later the partolmen saw Propst appear at the second floor front window and pull down the blinds.

On May 2, 1966, the police officers observed a meeting between Propst and an unidentified man near the New York Grill Restaurant. Soon after the two men met, Propst took a slip of white paper from his shirt pocket, studied it, and returned it to his pocket. Thereupon, Propst gave the man some U. S. currency. Then Propst took an Armstrong Scratch Sheet from his trousers' pocket and handed it to the unidentified man who consulted it. At this point, the two men were approached by a third man to whom Propst gave some U. S. currency after consulting the slip of paper in his shirt pocket. The third man then departed. The second man, to whom Propst had originally been talking, returned the paper with some U. S. currency to Propst who then marked his scratch sheet. The patrolmen then watched Propst walk to 2100 E. Fairmount Avenue and enter the building. Soon, he appeared at the second floor front window and pulled down the window shade.

The next day, the patrolmen observed Propst leave the restaurant with another man. After a brief conversation they parted and Propst entered 2100 E. Fairmount Avenue. A few

---

1. The patrolmen noted that "Double Oats" was the name of a race horse entered to race on April 30, 1966 in the first race at Garden State Race Track while "Red and Black" was a name of a race horse entered the same day in the second race.

minutes later he again appeared at the second floor front window and pulled down the shade. Propst went to the premises each day at approximately 11:30 A.M.

There was no indication as to the experience of the officers who made the observations.

To support their argument the appellants rely principally upon *Wood v. State*, 185 Md. 280, 44 A. 2d 859 and *Frantom v. State*, 195 Md. 163, 72 A. 2d 744. In *Wood* the officer observed a lunchroom on four consecutive days. He saw at least 50 people enter the lunchroom on those four days and stay only two or three minutes. On two days a man wearing a white apron came to the door, looked up and down the streets several times and went back to the lunchroom. The court held that the affidavit did not show probable cause because it was entirely possible that the people could have made trivial purchases to account for the short time they spent on the premises. In *Frantom v. State, supra,* a police officer saw several known gamblers enter a poolroom and several other men enter the establishment, and the same observations were made on the succeeding three days. The Court held that those facts did not constitute probable cause to believe the gambling was being committed stating that a man of prudence and caution might well believe that the entry of the gamblers was to play pool or to loaf.

We think, however, the present case is more like *Henderson v. State*, 243 Md. 342, 221 A. 2d 76 where the Court sustained the warrant after two experienced police officers, upon receiving complaints as to a private premises saw the accused leave the premises and walk to a restaurant in the next block; a few minutes later he went to a nearby bakery where he remained a very short time; he next walked to the drugstore for a short visit, and then walked to a gasoline station on the corner. At the gasoline station, it was observed that an apparent employee of the station gave U. S. currency to the accused who took from his jacket a white pad and pencil and made a notation thereon. The accused returned to the original premises, and within minutes a described female rang the doorbell; the man opened the door and after a brief conversation the woman gave and the man accepted some U. S. currency.

Two days later the officers observed the same woman enter the dwelling and a few minutes later leave. Within ten minutes two men separately entered the dwelling and left very soon after entering. While it is true that in the present case betting was not actually shown to have taken place on the searched premises, we think the observations over a period of three days warranted a cautious and prudent judicial officer in finding there was probable cause to believe that the laws against bookmaking were being violated at 2100 E. Fairmount Avenue.

We regard the present case as an application of the rule laid down by the Supreme Court of the United States in *United States v. Ventresca*, 380 U. S. 102, 85 S. Ct. 741, 746, 13 L. Ed. 2d 684 in the following language:

> "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. *Jones v. United States, supra*, 362 U. S. [257], at 270, 80 S. Ct. [725], at 735 [4 L. Ed. 2d 697]."

While we agree that the present case is marginal, we think that the pattern of daily action, particularly including the regularly lowering of the window shade as Propst returned to the apartment at 11:30 A.M. each day, supports the holding. It should be noted that evidence sufficient for conviction is not required for the issuance of a search warrant, *Frantom v. State, supra*.

Appellants next contend the search warrant was improper because the affidavit was made before a judge of the Supreme Bench of Baltimore City, and that although a judge of a court of record has authority to take acknowledgments under Section of 2 Article 18 of the Md. Code, there is no statute specifically authorizing a judge to administer an oath. This precise argument seems not to have been presented to a Maryland appellate court heretofore, however, in the few cases in which such an argument has been made it has been universally held that the court has inherent authority to administer an oath.

In *Scott v. State,* 1 Md. App. 481, 231 A. 2d 728 it was contended that the search warrant was "deficient because affiant was not sworn before the notary." This Court at 1 Md. App. 485 answered that contention by stating that:

> "The record affirmatively shows that in both instances the applicant was sworn by the judge who issued the warrant. This is sufficient, whatever the notary may have done. *Tucker v. State,* 244 Md. 488, 497, 224 A. 2d 111.

In *State v. Townley,* 67 Ohio St. 21, 65 N. E. 149, 93 Am. St. Rep. 636 (1902), the Supreme Court of Ohio stated that:

> "It is fundamental that every court has inherent power to do all things which are reasonably necessary for the administration of justice within the scope of its jurisdiction. *State v. Caywood,* 96 Iowa 367, 65 N. W. 385. Therefore it is not necessary that there should be a statute empowering the courts to administer oaths in the trial of cases. The power is implied in the jurisdiction to try cases, and to receive the testimony of witnesses under oath. It was under this principle, apparently, that the Supreme Court of Tennessee held that 'the judge himself may administer the oath, or he may direct anyone in his presence, in open court, to administer it, and the oath will be valid'. *Stephens v. State,* 1 Swan, 157."

Other cases following this principle are: *Thomas v. Boise City,* 25 Ida. 522, 537, 138 P. 1110, *Ferguson v. Smith,* 10 Kan. 396, *Milton v. State,* 7 Okla. Cr. 407, 124 P. 81, *Guernsey v. Tuthill,* 12 S. D. 584, 82 N. W. 190, and *Keator v. People,* 32 Mich. 484.[2]

We hold that the search warrant was valid.

## II Authentication of Seized Document

When the warrant was served the officers seized, in addition to the lottery slips heretofore mentioned, a rent receipt issued

---

2. The Supreme Court in *United States v. Bailey,* 9 Pet. (U. S.) 238, 9 L. Ed. 113 (1835) touched on this principle *in dicta.*

by the landlord to the appellant, Ollie May, Jr. At the trial the receipt was entered into evidence without other authentication. On appeal appellants May allege that it was improperly admitted and its admission is reversible error. Since we will decide that there is an insufficiency of evidence to support the conviction of Ollie May, Jr. it is unnecessary for us to consider this objection with reference to him. We hold, however, that the evidence was admissible as to Ruth Virginia May under the principle that writings taken from an accused pursuant to a lawful search are admissible without further proof of the genuineness. See 2 Wharton, *Criminal Evidence* §§ 575, 585 (12th Ed.). Although the principle was not discussed it seems inherent in the holding of the Court of Appeals of Maryland in *Lauder v. State,* 233 Md. 142, 195 A. 2d 610 and more particularly in *Camphor v. State,* 233 Md. 203, 196 A. 2d 75. See also *Morrow v. State,* 190 Md. 559, 59 A. 2d 325 and 7 Wigmore, *Evidence* § 2160 at 632 (3rd Ed.).

### III  Incriminating Admissions

Appellants May next contend that the fact that they gave the address of 2100 E. Fairmount Avenue, second floor, as their address when they were booked at the police station was inadmissible under *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 because there was no proof that the warnings required by that case were given.

In *Clarke v. State,* 3 Md. App. 447, 240 A. 2d 291, this Court considered a similar contention where the place of employment was given in a routine booking procedure and the police used the information to recover the stolen merchandise involved in those proceedings. We held that although the appellant was in police custody, the "interrogation" under the circumstances there involved was not the type proscribed by *Miranda.* Although proof of the control of the premises at 2100 E. Fairmount Avenue, second floor front was one of the facts that the state was required to prove in order to convict the Mays, we do not think that routine booking procedures are the kind of interrogation covered by *Miranda* in the absence of unusual circumstances which are not here present.

## IV  Sufficiency of the Evidence

The appellants May contend finally the evidence was insufficient to convict them for knowingly permitting their apartment to be used for gambling purposes. This contention causes us no problem as to Ruth Virginia May. The property searched was her residence. She was actually present in an adjoining room at the time of the raids which disclosed that a large gambling operation was being conducted there daily. She can not be heard to say that she did not know that the operation was being conducted. She relies on *Yanch v. State,* 201 Md. 296, 93 A. 2d 749 wherein a conviction of a wife was reversed where lottery paraphernalia was found in a tavern operated by her husband and the wife was merely present. We do not think that case applies to the present situation where the apartment was shown to be the residence of the wife, as well as the husband, and the husband was not shown to have been present at any time when gambling operations were being conducted but that the wife was present.

The sufficiency of the evidence to convict Ollie May, Jr., however, presents a more difficult problem. The statutes pertaining to ownership or control of places where gambling is being conducted are set out in Md. Code Art. 27, §§ 240, 361, 362. On their face these statutes require that to be guilty a person must know that his premises are being used for the illegal purposes and they have been so construed by the Court of Appeals of Maryland, *Rowan v. State,* 175 Md. 547, 3 A. 2d 753. The sole evidence to convict Ollie May, Jr. was the fact that he resided at the raided premises. There was no evidence whatsoever that he was ever at the premises when illegal activities were being conducted or that he had *scienter* in any other manner. Compare *Moore v. State,* 199 Md. 676, 87 A. 2d 577.

> *Judgments affirmed as to Patrick Michael Propst and Ruth Virginia May. Judgments reversed as to Ollie May, Jr. and remanded for a new trial. Patrick Michael Propst and Ruth Virginia May and the City of Baltimore to each pay one-third of the costs.*