STEPHEN HALEY, JOHN H. PETERSON, JR., AND JACK M. ROBERTS *v.* STATE OF MARYLAND

[No. 349, September Term, 1968.]

*Decided May 6, 1969.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Michael J. Lambros* for appellant Haley, *Gordon G.*

*Power* and *Thomas G. Bodie* for appellant Peterson, and *M. Jacqueline McCurdy* for appellant Roberts.

*Robert A. DiCicco, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Dickee M. Howard, Assistant Attorney General,* and *Samuel A. Green, Jr., State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

On 16 August 1968 about 9:30 p.m. police officers entered a private dwelling in Baltimore County under the authority of a search and seizure warrant duly issued that same date upon an application sworn to by Detective Sergeant Raymond Donovan, a member of the Baltimore County Police Bureau.[1] There were about 7 adults and 4 juveniles on the premises, including the appellants. The occupants and the premises were searched. Evidence was found on the person of each appellant and seized:

Peterson: "a pack of cigarette roll paper, a piece of aluminum foil and wire hypodermic needle cleaners that are commonly used by narcotic abusers and a

---

1. It appeared that the State proffered the search warrant as part of its case but that it was not actually introduced into evidence by the State. It is clear that it was before the court, that it considered it and ruled "that as a result of the serving of a search and seizure warrant, lawful arrest was made of individuals. As a result of the lawful arrest the search of the individuals was proper." In any event each of the appellants offered the search and seizure warrant and it was then received into evidence. There was some question later raised as to whether the court had the application and affidavit before it when it considered the warrant and whether those documents were admitted. This Court pursuant to Md. Rule 1026e by its order submitted the matter to the lower court for determination. In compliance with the order the lower court made affidavit that it was its understanding that the application and affidavit were part of the proffer of the warrant by the State and of the proffer of the warrant by the defense at the time it was received in evidence. It noted also that the application was incorporated into warrant by reference and that at the time of its ruling it had the application and affidavit as well as the warrant before it.

black wooden pipe with an aluminum foil over the bowl commonly used for marijuana smoking." These articles were not introduced into evidence nor was there evidence that they were analyzed.

Haley: a black corncob pipe with aluminum foil over the bowl, two small brown envelopes containing "s u s p e c t e d marijuana", one small plastic vial containing suspected marijuana, aluminum foil and a sewing needle. The pipe, packages and vial contained marijuana.

Roberts: one Bufferin bottle containing a green substance that was "suspected of being marijuana", one vial containing three red capsules and seven white capsules. The bottle contained marijuana. The white capsules were two different sizes. Four of one size were methadone. The three of other sizes were "negative for amphetamines, LSD and opium." There was on evidence as to analysis of the red capsules.

Evidence was found on the premises and seized:

Rear bedroom: in a dresser drawer under clothing —10 #25 hypodermic needles with three eye droppers "adaptable for the use of narcotics, 8 blue capsules, 20 red capsules containing white powder, 5 white tablets, a brown envelope containing" suspected marijuana. The capsules and tablets contained phenobarbitol, DHDNL amphetamine, amibarbitol and seco-

barbitol. The envelope contained marijuana.

Another bedroom: under the mattress of a bunk bed—1 blue and white capsule containing a white powder, 2 red capsules containing a white power. They contained two types of secobarbitol and one capsule secobarbitol and amibarbitol.

The bathroom: in the medicine cabinet wrapped in toilet tissue—white tablets; in the bathtub—a broken vial containing marijuana traces; in the toilet bowl—two red capsules partly dissolved. The record does not disclose that these items were analyzed.

The kitchen: in a closet by the rear kitchen door —a small brown envelope. It contained marijuana.

Evidence was also found and seized by a search of Peterson's automobile parked in the driveway of the house: a pipe with aluminum foil attached, "of the type commonly used for marijuana smoking." It contained "marijuana, residue." The identification of the various drugs at the trial was by the testimony of expert witnesses who had made the analyses.

As a result of the raid, the appellants and Calvin F. Roche, Carl E. Weiland, Bruce L. Olney, James M. Wimberly and Carol Rae Maszarose were jointly indicted under indictment No. 34985. The record before us shows that individual indictments were also returned against Roberts—No. 34979; Peterson—No. 34980; Haley—No. 34981; Maszarose—No. 34978; Roche—No. 34977; Olney—No. Unknown and indicates that individual indictments were also returned against Wimberly and Weiland. The appellants and Roche, Olney and Maszarose were jointly tried on the indictments against them at a court trial in the Circuit Court for Baltimore

County.[2] Motions for judgments of acquittal as to the charges against Roche and Olney were granted at the close of the evidence offered by the State.[3] As to indictment No. 34985 each appellant was found guilty under the 1st count—possession of marijuana—and the 2nd count—control of marijuana—and each was sentenced to 5 years on each count, the sentence on the 2nd count to run concurrently with that on the 1st count. As to the individual indictments the convictions and sentences were as follows:

Roberts, indictment No. 34979: 3rd count—control of amphetamine; 5th count—possession of a barbiturate; 6th count—control of a barbiturate; one year on each count to run concurrently with the sentences on No. 34985.

Peterson, indictment No. 34980: 1st count—possession of narcotic paraphernalia; 3rd count —control of amphetamine; 6th count—control of a barbiturate; 5 years on the 1st count, one year on each of the 3rd and 6th

---

2. Wimberly prayed a trial by jury. The record is silent as to Weiland

3. Roche, Olney and a juvenile, Jean Kelly, entered the dwelling while the raid was in progress and were arrested and searched. No evidence was found on Roche and Olney. Jean Kelly had in her purse and on her person twelve red capsules containing white powder, twelve round double-scored white tablets, eleven suspected LSD capsules and thirteen round white capsules, all contained in a plastic bag. The capsules and tablets contained STP ("a hallucinagenic drug"), LSD, secobarbitol, DLM amphetamine. Apparently she was charged under juvenile proceedings. No evidence was found on the person of Maszarose but she was convicted of the 2nd count under indictment No. 34985—control of marijuana—and, as to indictment No. 34978, of the 3rd count —control of amphetamine—and of the 6th count—control of a barbiturate. She was sentenced to 3 years under No. 34985 and 3 years as to each count under No. 34978 to run concurrently with the sentence in No. 34985. (The docket entries show the sentence as to each count under indictment No. 34978 to be 1 year. The transcript of the proceedings shows them to be each 3 years.) Each sentence was suspended. "Probation—to report to the Probation Department of Baltimore County and under their direction for such length of time as they see fit within the three years, less or whatever they say." She noted an appeal but subsequently dismissed it.

counts, the sentences to run concurrently with the sentences on No. 34985.

Haley, indictment No. 34981: 3rd count—control of amphetamine; 6th count—control of a barbiturate; 1 year on each count to run concurrently with the sentences on No. 34985.

On appeal none of the appellants disputes that there was probable cause for the issuance of the search warrant. Each claims, however, that the evidence seized from his person was admitted in error and that the evidence found on the premises was not in his control. Peterson also claims that in any event the evidence found on his person did not establish that he possessed narcotic drugs and narcotic paraphernalia, that the law provides no penalty for the possession of narcotic paraphernalia, that the evidence found in his automobile was improperly admitted, and that his sentences were the "products of an unworthy motive." Roberts claims error by the introduction of evidence seized under the authority of a warrant which the State did not offer into evidence.

### THE INTRODUCTION OF EVIDENCE SEIZED FROM THE PERSON OF EACH APPELLANT

The warrant commanded Donovan, with the necessary and proper assistance:

"[T]o enter and search the premises known as 2218 Westridge Rd., Timonium, Baltimore County, Maryland aforementioned and described, to search for, seize and remove any and all and any parts thereof of any narcotics, drugs, narcotic paraphernalia, implements or instruments used with or in connection with the use of drugs and narcotics, further to search the body or bodies of any person or persons found therein and remove from the body or bodies of any person or persons found therein any and all and any parts thereof of

any drugs, narcotics, narcotic paraphernalia, instruments or implements used with or in connection with the use of narcotics or drugs and in particular that you search the body of Carl Weiland described as a W/M between 19 and 20 years of age, long brown hair, reddish brown beard and mustache, further that you bring the body or bodies of any person or persons found therein and in particular Carl Weiland, who are found participating in the said unlawful activities to wit: possession, control and sale of narcotics, before me, the subscriber, or some other Police Justice of the State of Maryland, County of Baltimore, aforesaid, to be disposed of and dealt with according to the law."

The search of each appellant and the seizure of evidence found on his person would be valid only if made under the authority of the warrant or as incident to a legal arrest outside of the warrant by reason that the officers had probable cause to believe that a felony had been committed and that the arrestee committed it or had probable cause to believe that a misdemeanor had been or was being committed in their presence and that the misdemeanant committed it or that the search was made with the voluntary consent of the person searched. *Simms v. State,* 4 Md. App. 160; *Randolph v. State,* 1 Md. App. 441; *Nadolski v. State,* 1 Md. App. 304. It is clear in the instant case that none of the appellants voluntarily consented to the search of his person.

In *Salmon v. State,* 2 Md. App. 513 we discussed at length the Maryland and federal constitutional provisions as to search and seizure and the Maryland search warrant statute, Md. Code, Art. 27, § 551, which provides, in part, for the issuance of search warrants on proper oath or affirmation where probable cause exists "to believe that any misdemeanor or felony is being committed by any individual or in any building, apartment, premises, place or thing * * * or that any property subject to seizure under the criminal laws of this

State is situated or located on the person of any such individual or in or on any such building, apartment, premises, place or thing." We concluded, at pp. 518-519 ·

"In view of the federal and state constitutional provisions relating to searches and seizures, and prohibiting general or blanket-type warrants, the statute prohibits the issuance of any warrant unless it shall 'name or describe, with reasonable particularity, the individual, building, apartment, premise, place or thing to be searched', together with, *inter alia,* the 'grounds for the search'.

It is thus clear from the provisions of the statute that what it, in effect, authorizes is a *search* of persons, places or things, as reasonably particularized in the warrant, for specifically designated property, unlawfully obtained or held, or of evidence of the commission of the crime, now including items relating thereto which are purely evidentiary in nature. (See *Warden v. Hayden,* 385 U. S. 926). As the search warrant is issued for the basic purpose of making a search, the probable cause necessary to support its issuance requires a proper showing not only that a crime has been or is being committed, but also that the evidence of the crime is upon the person or within the place or thing to be searched. * * * It is likewise clear that while a search warrant is issued only for the purpose of making a search, and thus does not operate as an arrest warrant, nevertheless that where a directive to make an arrest is included as one of the commands of the warrant, such directive is a conditional one—valid only if the search reveals the commission of an offense, in which event the arrest is for the offense revealed by the search. * * *."
(citations omitted)

Against this background we considered the effect of a

command in the warrant—as was contained in the warrant here—not only to search the designated premises and the person named or described in the warrant (only Weiland here) but to search "the body or bodies of any person or persons found therein", and seize narcotics and narcotic implements so found and arrest all persons "who are found participating in the said unlawful activities". We said that such provision did not render the warrant general and invalid *in toto* but we found that "the command of the search warrant to arrest and search all persons participating in the criminal activities" would not support a search of one on the premises who had not committed a crime in the presence of the searching officers". at 521. The officers were lawfully on the premises under authority of the warrant but as the appellants were not named in the warrant, the inquiry is whether the officers had probable cause to believe that the appellants were participating in criminal activities proscribed by the narcotics laws —if a misdemeanor by committing it in the presence of the officers; if a felony either that they were committing or had committed it.

We cannot conclude from the evidence that the premises were searched and evidence found prior to the arrest and search of the appellants. Donovan testified that when he and the other officers pulled up to the front entrance of the house, the police vehicle was parked at the end of the driveway on the street. There was a large plate glass window in the living room. "As we gained the approach in front of the house I observed through the window several of the people in the house scurrying about as if they were running. We immediately approached the front door, knocked on the door, advised them that we were police officers and demanded entrance. There was no reply. We could tell there were numerous people running about. We forcibly entered the front door and entered the premises. At this time, we again told them that we were police officers and had a search warrant for the premises and everybody was

under arrest." Donovan saw Roberts "trying to run into the kitchen" and Haley was "trying to make an exit through the kitchen door. Several people had run into the bedroom which is immediately left after you enter the foyer of the home. And there were others who had gone to the far bedroom which is also off the living room to the left of the home. And a few people were trying to exit through the rear kitchen door and this exit was blocked by oncoming police officers." Donovan "immediately grabbed Roberts and pulled him back into the living room and placed him under arrest". He said he determined there was a party by the "unusual crowd. There were no alcoholic beverages found on the premises. No ice cream or cake and an ensuing search of the premises revealed illicit narcotics and narcotics paraphernalia." Peterson was searched by Donovan. Haley was searched by Corporal Grimes. Roberts was searched by Detective Manzari. All were in the living room when searched. The police had entered the premises about 9:40 p. m. About 10:00 p. m. Roche, Olney and Jean Kelly arrived and were arrested. Donovan said, "Then a search was made of the rest of the premises by Corporal Grimes and Detective Manzari." Weiland, "the owner of the home or the person who resided there * * * was taken along with Corporal Grimes and Detective Manzari while a search of the premises was conducted." They searched each room. We find nothing in the testimony of Corporal Grimes and Detective Manzari to establish that the search of the premises preceded the search of the appellants. The lower court found: "The police had probable cause to believe that a felony was being committed at 2218 Westridge Road, that as a result of the serving of a search and seizure warrant, lawful arrest was made of individuals. As a result of the lawful arrest, the search of the individuals was proper." We agree that the application for the warrant showed probable cause for its issuance. We do not agree that the arrest of the appellants was legal under the authority of the

warrant. The warrant did not specifically command their arrest and search, and there was no evidence, testimonial or otherwise, apart from the search warrant, to show that the police had probable cause to believe that the appellants were violating the narcotics laws at the time of their arrest and the search and seizure incident thereto. The application for the warrant, stating the information from a reliable informant, "known to have supplied prior correct information to Police Authorities in the past which resulted in several arrests", was that since the owners of the premises, the parents of Carl Weiland have been in Europe, "narcotic parties are being held in their home nightly and are being sponsored by their son Carl. Narcotics of every description are being used, sold and purchased during those parties." Roche and Roberts were named as being present at one of the parties on 12 August 1968; Roche was named as selling "sets" at a party on the premises on 15 August with about 35 persons present, "all of whom engaged in various types of narcotics use." At that party Roche said he and Peterson were growing "pot" nearby. The informant took the police to a place where they saw about 2 dozen marijuana plants growing. The informant told the police that another narcotic party would be in progress on the night of 16 August at the Weiland residence. None of this information came into evidence in the trial. The affidavit upon which a search warrant is based is not evidence at the trial. *Noel v. State,* 202 Md. 247, 250, citing *Goss v. State,* 198 Md. 350, 353-354. It may be that had this evidence been before the court on the issue of probable cause independent of the warrant, it would have been sufficient to show that the police had probable cause to believe that all present on the premises on the night of 16 August were committing a felony proscribed by the narcotic laws, but in the absence of such evidence, we do not believe that the evidence before the court was sufficient to so show. It was not sufficient to show that the appellants were participating in the criminal activi-

ties at the time of their arrest and search and seizure of the evidence from them nor that there was probable cause to believe that they had committed any other felony or a misdemeanor in the presence of the officers. We reach this conclusion aware that presence at the scene of a crime and flight (if the actions of the appellants may be considered as attempted flight) are factors which may be considered. See *Farmer v. State,* 5 Md. App. 546; *Salmon v. State, supra.* Thus the arrest of each was not legal under the warrant or outside of it. The arrests being illegal, the search and seizure of the evidence from the person of each of the appellants was unreasonable and thus inadmissible. Therefore, as to indictment No. 34985, under which each appellant was convicted of possession and control of marijuana, the marijuana seized from the person of Roberts and Haley may not serve as a basis for their convictions. As to Peterson, there was no evidence that marijuana was seized from his person; the pipe found on him was not shown to contain marijuana. As to indictments Nos. 34979, 34980 and 34981 in which Roberts, Peterson and Haley were respectively individually charged, nothing seized from their persons may serve as the basis of the convictions under those indictments.[4]

With regard to indictment No. 34985 as to Peterson, on the question of the legality of seizure of evidence, there remains the pipe containing marijuana obtained by a search of his automobile.[5] As his arrest was il-

---

4. We need not decide whether the "hypodermic needle cleaners" characterized as "commonly used by narcotic abusers" found on Peterson and not introduced in evidence were narcotic paraphernalia. We note, however, that Code, Art. 27, § 297 proscribes the possession of "a hypodermic syringe or needle or any instrument or implement adapted for the use of habit-forming drugs by *hypodermic injections* * * *." (emphasis added) We do not now determine whether "hypodermic needle cleaners" are encompassed therein.

5. Donovan testified on direct examination that the pipe introduced in evidence and shown to contain marijuana was taken from Peterson. On cross-examination it was elicited that the pipe was "in his automobile, parked on the driveway of the home, as I recall * * * we searched several cars that were on the property

legal, the search of his automobile could in no event be held reasonable as incident thereto. The question is whether the search of the automobile was authorized by the warrant. There was no express command in the warrant to search the automobile although there may be a valid warrant for the search of a described automobile. *Martini v. State,* 200 Md. 609. Compare *Giordano v. State,* 203 Md. 174. The record before us does not show the exact location of the automobile when it was searched, except that it was parked on the driveway of the home. "There is quite a long driveway on the premises". Upon timely objection to the introduction of the pipe, the court ruled that it was "within the bounds of the search and seizure warrant". It appears that the pipe was not within view in the automobile but in the glove compartment. While a search warrant authorizing a search of certain described premises may authorize a search of the adjoining buildings constituting one business establishment as in *Ferguson v. State,* 236 Md. 148, "what is decisive in every case is the identity of that which is to be searched". *Dow v. State,* 207 Md. 80, 83. In the circumstances here we do not feel that the command in the warrant to enter and search the particularly described premises, authorized a search of Peterson's automobile even if it was parked on the property on which the premises were located. Nor can we say from the evidence that the officers had probable cause in the constitutional sense to believe that the vehicle contained that which was subject to seizure (contraband or the fruits or instrumentalities of a crime) so as to make the search reasonable without out a warrant or previous valid arrest. See *Cornish and Gilman v. State,* 6 Md. App. 167; *Sweeting v. State,* 5 Md. App. 623. We find that the pipe seized from the car and evidence that it contained marijuana was admitted in error and cannot serve as the basis for conviction of Peterson under indictment No. 34985.

---

\* \* \* after we went into the home and arrested each one on the premises."

### THE EVIDENCE FOUND ON THE PREMISES

As the police were lawfully on the premises under the authority of a valid warrant, evidence seized as a result of a search of the premises was properly admissible. In so finding we dispose of Roberts' contention that the State did not introduce the warrant by pointing out that it was clearly before the court and considered by it and that in any event it was introduced into evidence by each of the appellants, including Roberts. The question is whether the evidence found on the premises was in the possession or control of the appellants.

Md. Code, Art. 27, § 277 provides:

"It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense or compound any narcotic drug, except as authorized in this subtitle". (The exceptions are not here applicable).

"Possession" and "control" under the statute are two separate offenses. *Bryant v. State*, 229 Md. 531, 537. The Court said in *Bryant* that the words must be given ,their ordinary meanings. It defined "control" according to Webster's Third New International Dictionary, Unabridged (1961) as "to exercise restraining or directing influence over", and noted that it has been defined to relate to authority over what is not in one's physical possession. 229 Md. at 537. This Court defined "possession" according to the same Dictionary in *Williams and Williams v. State*, 7 Md. App. 5, as "the act or condition of having in or taking into one's control or holding at one's disposal". And we have said that possession need not be immediate and direct; there may be constructive possession. *Broadway v. State*, 3 Md. App. 164, 166. Sole possession is not required; there may be joint possession in several persons. *Rucker v. State*, 196 Md. 334, 340. The duration of the possession

and the quantity possessed are not material, nor is it necessary to prove ownership in the sense of title. *Peachie v. State,* 203 Md. 239, 243.[6]

With regard to the evidence found in the house, as to indictment No. 34985, under which each appellant was convicted and sentenced both for possession and control of marijuana, and as to the individual indictments charging each of them separately, we do not think that the evidence was sufficient to establish that any of them were "possessed" of the drugs and paraphernalia found on the premises or that those articles were "under the control" of any of them as those terms are defined. We reach this conclusion in considering that none of the appellants had any proprietary interest in the premises or lived there; that it was not shown, outside of the search warrant, that any of them had been on the premises at any time in the past; that there was no evidence how long they had been on the premises prior to the arrival of the police; that the police entered the premises and made the arrests "immediately" upon their arrival—"we knocked on the door and said 'police'. No one answered. And we forcibly entered the premises with a maul at this time." The lapse of time between the knocking and entering was only such time "it takes to hit the door twice with a maul, pretty rapidly * * * thirty seconds, it could have been five to ten (seconds)"; that the articles were not in the living room but in a dresser in a bedroom under clothing, under a mattress in another bedroom, in a closet in the kitchen;[7] that they were not found in close prox-

---

6. We think it clear that if a person has physical possession of a narcotic it is also under his control. Thus as possession and control are separate offenses, upon a conviction of a person possessing a narcotic on evidence that he physically possessed it, a conviction of having that same drug under his control would be duplicitous. Whether or not a conviction of possessing a narcotic based on evidence of constructive possession and a conviction of control of the same narcotic would be duplicitous would turn on the factual circumstances.

7. The evidence found in the bathroom was not shown to be narcotics or marijuana as far as can be ascertained from the record.

imity to the appellants; and that there was no direct evidence properly admissible that they were engaged in violation of the narcotic laws. The appellants did not have physical possession of the articles, and we cannot say that the evidence showed directly or supported a rational inference that the appellants had constructive possession of the articles or that they had obtained a measure of control or dominion over them or that they exercised restraining or directing influence over them. We find that the evidence as to the articles found on the premises was not sufficient to sustain the convictions and that the lower court was clearly wrong in its judgment thereon. Md. Rule 1086. See 91 A.L.R. 2d, *Anno: Narcotic—Possession—What Constitutes*, pp. 812-831.

In view of our findings that the evidence seized from the person of each appellant and that seized from the automobile were not properly admissible and that the evidence found on the premises, while properly admissible, was not sufficient to sustain the convictions, each judgment against each appellant must be reversed.

As to the other questions presented by Peterson we note that the penalty for possession of narcotic paraphernalia proscribed by Code, Art. 27, § 297 is provided by § 300(b). We think it the legislative intent that the words "*any person who violates any of the provisions of this subtitle, other than those referred to in subsection (a), [§§ 277, 291 or 295], with regard to any narcotic drug specified in § 276 herein, shall be guilty of a misdemeanor and upon conviction shall be fined not more than one thousand dollars ($1,000) and shall be imprisoned for not less than two nor more than five years*" (emphasis added) encompasses the crime created by § 297 in that paraphernalia "for the use of habit-forming drugs by hypodermic injections" is "with regard to any narcotic drug specified in § 276". We note in passing that the sentences imposed on Peterson did not exceed the maximum authorized by § 300 and that we find nothing in the record to show

that they were dictated by passion, ill-will, prejudice, any unworthy motive or other than a sense of public duty. See *Smith v. State,* 6 Md. App. 114.

> *As to each appellant:*
>   *judgments under the 1st and 2nd*
>   *counts of indictment No. 34985*
>   *reversed;*
> *As to Roberts:*
>   *judgments under the 3rd, 5th and 6th*
>   *counts of indictment No. 34979*
>   *reversed;*
> *As to Peterson:*
>   *judgments under the 1st, 3rd and 6th*
>   *counts of indictment No. 34980*
>   *reversed;*
> *As to Haley:*
>   *judgments under the 3rd and 6th*
>   *counts of indictment No. 34981*
>   *reversed;*
> *All cases remanded for a new trial;*
>   *costs to be paid by the Baltimore*
>   *county council.*[8]

---

8. By order of the lower court the appeal of Roberts was prosecuted by him as an indigent defendant.