VINCENT IANNONE, LESLIE N. SELLMAN, and
CARROLL T. GLORIOSO *v.* STATE OF
MARYLAND

[No. 564, September Term, 1969.]

*Decided July 24, 1970.*

---

82

The cause was argued before MURPHY, C.J., and AN-DERSON, MORTON, ORTH, and THOMPSON, JJ.

*Alan H. Murrell* for appellants.

*Francis X. Pugh, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Joseph Harlan, Barry S. Frame,* and *Peter D. Ward, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

On June 13, 1968 a warrant was issued authorizing search of apartment 910 of the Washington Park Apartments in Baltimore for illegal lottery slips and related gambling paraphernalia. The warrant was executed the same day and resulted in the seizure of evidence indicating that the lottery laws were being violated on the prem-

ises. Appellants were subsequently charged with various lottery offenses and the incriminating evidence seized under the warrant was introduced against them at their joint court trial. Appellants Iannone and Glorioso were each convicted of keeping a room (apartment 910) for the purpose of selling lottery tickets and possession of lottery slips. Appellant Sellman was convicted of keeping and permitting a room (apartment 910) to be kept for the purpose of selling lottery tickets. Appellants jointly contend on appeal that the search warrant was issued without probable cause and was therefore invalid.

In the application for the warrant, the affiant, an F.B.I. Agent, recited that "a confidential informant who has furnished information which has proven to be reliable in the past" advised that Leslie Sellman was employed by Vincent Iannone, operator of the Atlas Vending Company; that two weeks prior to April 16, 1968, the informant was told by Sellman, who lived at 1210 North Calvert Street, that he had been given money by Tony Iannone to rent and furnish an apartment somewhere in Baltimore for the purpose of booking numbers; that on May 6, 1968, a representative of a furniture rental company advised the affiant that Sellman had rented furniture for an apartment at 111 West Centre Street (the Washington Park Apartments); that on May 7 and 22, 1968, representatives of the Washington Park Apartments advised that Sellman and Tony Iannone had together rented apartment 910 for one year; that on May 31, 1968, the affiant was standing in the public hall in front of apartment 910 at 4:35 p.m. when he overheard a male voice inside the apartment say "All we can take is $200.00," followed by the sound of an adding machine; that on the same day, the affiant heard a male voice inside apartment 910 use the words "lay off"; that at 5:40 p.m. the same day two males left apartment 910 and entered separate Cadillac automobiles, one of which was registered to the Atlas Vending Company; that on June 5, 6, 7 and 10 these same men, one of whom interim investigation revealed to be Glorioso, were again observed "in the vi-

cinity" of apartment 910; that Glorioso had previously been convicted on gambling charges in 1966; that Sellman had previously been arrested in Philadelphia and Las Vegas; that the telephone in apartment 910 was listed to Sellman and a number of long distance calls had been made therefrom, including calls to a Washington number listed to two named individuals arrested on gambling charges in January, 1968 and known to the Intelligence Unit of Internal Revenue Service to be conducting a large scale gambling operation in Washington; and that on June 12, 1968, Glorioso was observed to park his car, "conceal sheets of white paper" under the front of his shirt, and then go to the vicinity of apartment 910. On the basis of these allegations, the affiant concluded that gambling activity was being conducted on an interstate basis in apartment 910.

That a search warrant may properly issue based on hearsay information not reflecting the direct personal observations of the affiant is well settled, so long as the magistrate is informed of some of the underlying circumstances from which the affiant could reasonably conclude that the hearsay information was reliable and that the items sought to be seized were within the place to be searched. *Grimm v. State,* 6 Md. App. 321; *Scott v. State,* 1 Md. App. 481. We think it clear that an undisclosed informant's reliability is not established by the affiant's mere unsupported and unparticularized conclusory assertion that he has "furnished information which has proven to be reliable in the past." *See Aguilar v. Texas,* 378 U. S. 108; *Gatewood v. State,* 244 Md. 609; *Frey v. State,* 3 Md. App. 38. But where, as here, the information provided by the informer's tip is corroborated by independent police work undertaken by the affiant, the details of which are recited in the warrant application, we think the informer's tip, together with the other allegations in the warrant, may be collectively considered in determining whether probable cause existed for the issuance of the warrant.[1] *See Spinelli v. United States,* 393 U. S. 410;

---

1. The informer's reliability can never be established *solely* by

*Price v. State,* 7 Md. App. 131. Clearly, the conversation personally overheard by the affiant emanating from apartment 910 on May 31, 1968 provided strong corroboration of the informer's tip; this fact, viewed in the light of the other recitations in the affidavit, heretofore set forth, provided far more than mere suspicion that the lottery laws were being violated on the premises. Of course, only the probability, and not a *prima facie* showing of criminal activity is the standard of probable cause. *Beck v. Ohio,* 379 U. S. 89; *Cornish v. State,* 6 Md. App. 167. Equally clear is the principle that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, *United States v. Ventresca,* 380 U. S. 102; that the determination of a magistrate that probable cause exists should be paid great deference by reviewing courts, *Jones v. United States,* 362 U. S. 257; and that when determining whether an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded to warrants, *United States v. Ventresca, supra.* We conclude, within this constitutional framework, that the search warrant was properly issued.

Appellant Glorioso separately contends that his arrest was illegal and that evidence seized from his person, namely a key to apartment 910, was improperly introduced in evidence at his trial. The substantive evidence testimonially adduced at the trial by the State showed that Lieutenant George Andrew of the Baltimore City Police Department, and F.B.I. Agent David Faulkner, were in the apartment across the hall from apartment 910 on June 13, 1968 preparing to execute the search warrant; that through a peephole, Glorioso was observed to knock at the door of apartment 910; that a man's voice from within the apartment asked "Who is it," to which Glorioso responded "It's me"; and that thereafter "there was a sound of door unlocking, a barrier being let down

---

reason of the fact that his information proved accurate when acted upon. *Bolesta v. State,* 9 Md. App. 408.

from inside the apartment, and the latch being taken off the door." According to Agent Faulkner's testimony, he then went into the hall and opened the door to apartment 910 and entered. According to Andrew's testimony, he followed Agent Faulkner, and observed that Glorioso was "partly in the door and partly out"; that he had taken one step into the apartment. Andrew admitted pushing Glorioso the rest of the way into apartment 910. The appellant Iannone was the only other person in the apartment. The police observed gambling paraphernalia throughout the apartment in plain view. The door to the apartment had been reinforced by two-by-fours. Several minutes after the officers had entered, they searched Glorioso's person and found a key to the apartment in his trousers.

The trial court found Glorioso's arrest and subsequent search to be lawful on alternative grounds. It concluded that because there was evidence showing that Glorioso had a foot in the apartment, he was properly searched as a participant in the criminal activities there observed. It further ruled that even if Glorioso was not in the apartment, he was in the hallway, which was appurtenant to the apartment and constituted part of the premises authorized by the warrant to be searched.

We held in *Salmon v. State,* 2 Md. App. 513, that a search warrant authorizes a search of persons, places or things, as particularized in the warrant, for specifically designated property, unlawfully obtained or held, or of evidence of the commission of the crime, including items relating thereto which are purely evidentiary in nature; that a search warrant does not operate as an arrest warrant; that the directive to make an arrest customarily included as one of the commands of the search warrant is a conditional one—valid only if the search reveals the commission of an offense, in which event the arrest is for the offense revealed by the search. It is thus clear that officers armed with a search warrant for particular premises, as here, are not authorized to search all persons found therein. *See Denikos v. State,* 9 Md. App. 603.

Nor would the command of the search warrant to arrest and search all persons participating in the criminal activities support a search of one on the premises who had not committed a crime in the presence of the searching officers. *See Haley v. State,* 7 Md. App. 18.

But whether Glorioso was named in the warrant or not, or whether he was lawfully on the premises to be searched or not, or whether the premises to be searched included the public hallway or not are questions simply beclouding the real issue of whether, under the circumstances, Glorioso's arrest and the subsequent search of his person were lawful. We think they were. A warrantless arrest by a police officer is valid where he has probable cause to believe that a misdemeanor has been or is being committed in his presence or view and that the arrestee is the misdemeanant. *Robinson v. State,* 4 Md. App. 515. That the police had probable cause to believe that the lottery laws were being violated in apartment 910 (a misdemeanor) is clear. They were preparing to execute the warrant when Glorioso knocked on the door and made his identity known simply by stating "It's me." By force alone of that message the reinforced door to the apartment was in the process of being readied for opening when the police, taking advantage of the opportunity thus afforded them, lawfully gained access to the apartment. Seeing lottery paraphernalia in plain view as they entered the apartment, the police had probable cause to believe that because of Glorioso's obvious clandestine identification with the apartment, he was a participant in the misdemeanor being committed in their presence; indeed, only seconds before entering the apartment, Glorioso had demonstrated to the officers that he was so well known in the apartment that a simple "It's me" greeting sufficed to permit him entrance through the reinforced door. As stated in *Davids v. State,* 208 Md. 377, a crime is committed in the presence of an officer when his senses afford him knowledge that such is a fact; and that where some evidence of a commission of a misdemeanor reaches an officer through his senses, and it is augmented by other

strongly persuasive facts in his possession, all of which is sufficient to convey virtual knowledge to any normal mind that the misdemeanor is then being committed, the officer may act upon such information as being tantamount to actual knowledge that the misdemeanor is being committed in his presence.[2] Within these rules, we conclude that appellant was lawfully arrested and that the subsequent search of his person incident thereto was likewise lawful.

*Judgments affirmed; costs to be paid by appellants.*

---

2. The affidavit upon which a search warrant is based is not substantive evidence at the trial. *Noel v. State,* 202 Md. 247; *Haley v. State, supra.* While the affidavit contained recitations showing Glorioso's involvement with the apartment on May 31 and June 5, 6, 7, and 10, 1968, no substantive evidence thereof was adduced at the trial in support of the legality of his arrest. The only evidence at trial concerning his connection with apartment 910, and all that we here consider, is that showing his activity on the day of his arrest.