## NAOMI M. GERMAN *v*. STATE OF MARYLAND

[No. 209, September Term, 1971.]

*Decided January 25, 1972.*

The cause was argued before MORTON, CARTER and GILBERT, JJ.

*Bert S. Mazaroff* for appellant.

*Josef Rosenblatt, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Howard L. Cardin, State's Attorney for Baltimore City,* and *Joseph B. Harlan, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

CARTER, J., delivered the opinion of the Court.

The appellant Naomi M. German was convicted by Judge Albert L. Sklar, sitting non-jury in the Criminal

Court of Baltimore, of the unlawful possession of controlled paraphernalia adapted for the administration of controlled narcotics in violation of *Md. Code,* Art. 27, § 287(d) and sentenced to three years in prison. She appeals from this judgment.

Her sole contention is that the four hypodermic needles, two hypodermic syringes, and one burnt bottle cap found in her second-floor apartment located at 301 East 21st Street in Baltimore City were seized in consequence of an invalid search warrant. It was stipulated by the parties that the articles seized were normally used to inject controlled dangerous narcotics into the system of drug abusers. Prior to trial the appellant's motion to suppress the evidence was denied.

The search warrant was issued on August 17, 1970, by the Municipal Court of Baltimore City for the second and third-floor apartment located at the southeast corner of 21st Street and Guilford Avenue and owned, rented, or occupied by a Negro female, 24 years of age, five feet three inches in height, weighing 120 pounds. The warrant was also directed against the person of the described Negro female. Relevant parts of the application of Patrolman Diggs for the search warrant recited that he had been exposed to a three-day narcotics seminar and a two-week school course on narcotic drugs conducted by the Federal Bureau of Narcotics and Dangerous Drugs and that he had made approximately 125 arrests for narcotic violations. On August 7, 1970, about 4:30 p.m., he had received information from a "confidential, reliable informant" that about 3:00 p.m. on that date the informant accompanied by two other Negro males had gone to the second-floor apartment at 301 East 21st Street. One of the persons accompanying him had knocked on the apartment door which was soon answered by a female Negro known as "Naomi." The person who had knocked asked Naomi if she had any Methodone and Naomi answered in the affirmative stating she had just gotten in a "fresh batch" and invited the three

persons inside. The informant and his two companions then went inside the apartment, and Naomi left the room, returning shortly with a brown paper bag. She then inquired how many they wanted. The person who had knocked on the door replied they wanted three bags. Naomi then reached into the brown paper bag and counted out three clear bags containing a white substance and handed them to the person who had ordered them. In turn the person handed her $15. She then said, "The sale will be $3 more, baby; the price has gone up." Each of the three persons then gave Naomi a dollar each. The person who had ordered the drugs then inquired of Naomi if she cared if they used her works to shoot up with. "Works" in narcotic terms means hypodermic needles and syringes, and "shoot up" means to inject drugs into the veins of drug abusers. Naomi agreed, provided they cleaned up after they had finished. She then left the room and returned in about a minute and handed the person who had ordered the drugs a paper bag containing hypodermic needles and syringes. The informant and his two companions then injected the drugs into their systems and left the apartment.

The affiant knew the informant to be reliable because he had given the affiant information in the past that had resulted in numerous arrests of narcotic violators who had been subsequently indicted and convicted. Acting on this information, Patrolman Diggs on August 7, 1970, at about 9:00 p.m. had positioned himself outside the premises at 301 East 21st Street where he could observe persons going to and coming from the apartment. From 9:00 p.m. until 11:15 p.m. on this date, he observed 16 Negro males and 2 white males go into 301 East 21st Street where they remained for varying periods of time and then departed. About 10:10 p.m. he observed 3 Negro males enter the premises who after remaining inside for about 20 minutes exited with two of them carrying the third one who appeared to be either drunk or drugged.

The comparatively recent pronouncements of the United States Supreme Court on the question of the sufficiency of hearsay information to establish probable cause for the issuance of a search warrant within the constitutional proscriptions of the Fourth and Fourteenth Amendments are to be found in the much-considered cases of *Aguilar v. Texas,* 378 U. S. 108, 12 L.Ed.2d 723, 84 S. Ct. 1509 (1964) ; *Spinelli v. United States,* 393 U. S. 410, 21 L.Ed.2d 637, 89 S. Ct. 584 (1969) and *United States v. Harris,* 403 U. S. 573, 29 L.Ed.2d 723, 91 S. Ct. 2075 (1971).

In *Aguilar, supra,* the search warrant was based on an affidavit of two municipal police officers reciting that they had received *reliable information* from a *credible person* that narcotics were being kept at the defendant's premises for illegal sale and that the affiants believed the information to be true. The Supreme Court held the search warrant invalid because of the absence of probable cause. In so holding the Court said at 114-115:

> "Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones v. United States,* 362 U. S. 257, 4 L.Ed.2d 697, 80 S. Ct. 725, 78 ALR2d 233, the magistrate must be informed of [1] some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and [2] some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, * * * was 'credible' or his information 'reliable'. * * *"

The principles enunciated in *Aguilar* respecting the sufficiency of hearsay information have been referred to as "the two-pronged test". That is to say, where the basis for the warrant consists of hearsay information from an undisclosed informant, "the magistrate must be informed of [1] some of the underlying circum-

stances from which the [undisclosed] informant concluded that the narcotics were where he claimed they were, and [2] some of the underlying circumstances from which the officer [affiant] concluded that the informant * * * was 'credible' or his information 'reliable'. * * *'' At p. 114.

In *Spinelli, supra,* the search warrant was directed against the apartment of the accused for evidence of an illegal gambling operation. The affiant alleged that he had been informed by a confidential, reliable informant that the accused was accepting wagers and disseminating wagering information by means of certain telephones which the informant designated by numbers. The affiant further alleged that his independent investigation revealed in substance that 1) the accused was seen to frequent a certain apartment, 2) there were two telephones in the apartment bearing the numbers designated by the informant and listed in a name other than the accused, and 3) the accused was known to the affiant and other law enforcement agents as a bookmaker and gambler. The Supreme Court held that the hearsay information when considered together with the independent investigative findings of the affiant were insufficient to pass the two-pronged test prescribed in *Aguilar*. In so holding, the Court said at page 415-416:

> "The informer's report must first be measured against Aguilar's standards so that its probative value can be assessed. If the tip is found inadequate under Aguilar, the other allegations which corroborate the information contained in the hearsay report should then be considered. At this stage as well, however, the standards enunciated in Aguilar must inform the magistrate's decision. He must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass Aguilar's tests without independent corroboration? * * *''

In *Harris, supra,* the Supreme Court by a 5-4 decision held a search warrant valid after taking into consideration some new dimensions in respect to probable cause. In sustaining the search warrant in that case, the Court held that in assessing an informant's credibility, consideration should be given to the fact that his statements were against his penal interests in that he had admitted an illegal purchase of untaxed liquor. The Court further held that in assessing the reliability of the informant's report it was appropriate for the magistrate to consider the accused's reputation as known to the affiant notwithstanding an earlier Court ruling in *Spinelli* to the contrary. In sustaining the validity of the search warrant, the Court pointed out that the informant's report contained an *ample factual basis* which when coupled with the affiant's knowledge of the accused's background and reputation and the informant's declaration against his penal interest constituted sufficient probable cause to issue the warrant. In so holding the Court said at 29 L.Ed.2d 731:

> "* * * While a bare statement by an affiant that he believed the informant to be truthful would not, in itself, provide a *factual* basis for crediting the report of an unnamed informant, we conclude that the affidavit in the present case contains an ample factual basis for believing the informant which, when coupled with the affiant's own knowledge of the respondent's background, afforded a basis upon which a magistrate could reasonably issue a warrant. The accusation by the informant was plainly a declaration against interest since it could readily warrant a prosecution and could sustain a conviction against the informant himself. * * *"

In interpreting the holdings in *Aguilar* and *Spinelli* as well as in other related decisions of the United States Supreme Court, of the Maryland Court of Appeals and of this Court on the subject of sufficient probable cause

to justify the issuance of a search warrant under pertinent constitutional provisions, Chief Judge Murphy, speaking for this Court, said in *Grimm v. State,* 6 Md. App. 321 at 326:

> "It is well settled that the presence or absence of probable cause to support a search warrant must be determined solely from the allegations of the application for the warrant. *Aguilar v. Texas,* 378 U. S. 108; *Tucker v. State,* 244 Md. 488; *Hall v. State,* 5 Md. App. 394. It is equally well settled that probable cause, which is less than certainty or demonstration but more than suspicion or possibility, is to be determined by the judge who issues the warrant, and if a prudent and cautious man would be justified from the facts presented to show its existence in believing that the offense had been or was being committed, the warrant properly may be issued. *Henson v. State,* 236 Md. 518; *Salmon v. State,* 2 Md. App. 513. It is thus clear that evidence which is sufficient for conviction is not required for the issuance of a search warrant. *Frantom v. State,* 195 Md. 163; *Propst v. State,* 5 Md. App. 36. In other words 'only the probability, and not a prima facie showing of criminal activity is the standard of probable cause.' *Spinelli v. United States,* 391 U. S. 933.
>
> * * *
>
> "* * * the determination of a magistrate that probable cause exists should be paid great deference by reviewing courts, *Jones v. United States, supra,* [362 U. S. 257]. * * *" (See also *United States v. Ventresca,* 380 U. S. 102).

In discussing the sufficient showing of probable cause where the application is based on hearsay information from an undisclosed informant, this Court said in *Iannone v. State,* 10 Md. App. 81 at 85:

> "That a search warrant may properly issue

based on hearsay information not reflecting the direct personal observations of the affiant is well settled, so long as the magistrate is informed of some of the underlying circumstances from which the affiant could reasonably conclude that the hearsay information was reliable and that the items sought to be seized were within the place to be searched. *Grimm v. State,* 6 Md. App. 321; *Scott v. State,* 1 Md. App. 481. We think it clear that an undisclosed informant's reliability is not established by the affiant's mere unsupported and unparticularized conclusory assertion that he has 'furnished information which has proven to be reliable in the past.' See *Aguilar v. Texas,* 378 U. S. 108; *Gatewood v. State,* 244 Md. 609; *Frey v. State,* 3 Md. App. 38. But where, as here, the information provided by the informer's tip is corroborated by independent police work undertaken by the affiant, the details of which are recited in the warrant application, we think the informer's tip, together with the other allegations in the warrant, may be collectively considered in determining whether probable cause existed for the issuance of the warrant. See *Spinelli v. United States,* 393 U. S. 410; *Price v. State,* 7 Md. App. 131.* * *"

In this case the underlying circumstances required under the two-pronged test enunciated in *Aguilar* consist of 1) the minute particularity of the circumstances surrounding the alleged purchase of drugs by the informant from the accused as set forth in the informant's report, 2) the circumstance that the informant's report to the police had constituted a declaration against his penal interest, and 3) the circumstance that the informant had previously given information to the affiant which had resulted in the arrest and conviction of numerous narcotic violators. The third circumstance show-

ing previous reliable information received from the informant is relevant on the issue of credibility in view of other supporting parts of the affidavit, even though standing alone it would be insufficient to establish credibility. (See *Aguilar, Iannone, supra*). See also *Dawson v. State,* 11 Md. App. 694; *Dawson v. State,* 14 Md. App. 18; *Moore v. State,* 13 Md. App. 711. These background circumstances were corroborated by the affiant's observations resulting from his independent investigation as previously related. We think when the background information is considered together with the observations of the affiant, that they constitute sufficient probable cause to justify a prudent and cautious magistrate in believing violation of the narcotic laws was being committed by the described person at the described location at the time the search warrant was issued.

Under the holdings and rationale in *Aguilar, Spinelli, Harris, Grimm, Iannone, Dawson* and *Moore* we find no error in the denial of the motion to suppress the evidence seized under the search warrant.

*Judgment affirmed.*